UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SKF USA INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 4709 |
| | ) | |
| DALE H. BJERKNESS, KEVIN KOCH, | ) | Judge Rebecca R. Pallmeyer |
| JOSEPH J. SEVER, and | ) | |
| WALTER REMICK, JR., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| SKF USA INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 2232 |
| | ) | |
| EQUIPMENT RELIABILITY SERVICES, INC., | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Dale Bjerkness worked for Preventive Maintenance Company, Inc., which was acquired by Plaintiff SKF USA Inc., in January 2007. The following year, Bjerkness left SKF and set up a competing business, taking with him a handful of other SKF employees and thousands of SKF's computer files. The decision to appropriate SKF's data is one that, the court suspects, Defendants have come to regret. Bjerkness testified that he and his colleagues did not need the information and could have competed just as effectively without it. SKF does not share that view, however; it sued the former employees and the competing business they established for misappropriation of trade secrets. In this dismayingly contentious litigation, SKF ultimately prevailed, winning an injunction and a modest damages award. *See SKF USA, Inc. v. Bjerkness* ("*SKF I*"), 636 F. Supp. 2d 696 (N.D. Ill. 2009)(entering preliminary injunction); *SKF USA, Inc. v.*

*Bjerkness* ("*SKF II*"), No. 08 C 4709, 2010 WL 3155981 (N.D. Ill. Aug. 9, 2010) (awarding damages). In granting the motion for a preliminary injunction, the court observed that if SKF's computer files were truly unnecessary to Defendants, their decision to take those files "was a colossally expensive, foolish mistake." (Prelim. Hr'g Tr., Dec. 11, 2008, at 1172.) Indeed, having prevailed, SKF now seeks a colossal award of attorneys' fees and costs. For the reasons explained here, that relief is granted in part and denied in part.

Defendants have made two general objections to Plaintiff's fee petition: that the fee request is disproportionate to the damages recovered, and that the petition seeks recovery for excessive billing. With respect to the proportionality concern, Defendants emphasize the very modest recovery: At the conclusion of a bench trial, the court awarded SKF just $81,068.00, consisting of damages in the amount of $41,068.00 and $40,000 in exemplary damages. Yet SKF now seeks attorneys fees in an amount that dwarfs the damages award: $1.3 million. Such a substantial award would improperly reward SKF's litigation strategy, Defendants argue; they assert that they offered several times prior to trial to settle the case for a much greater amount than Plaintiff ultimately recovered. The only logical conclusion, Defendants suggest, is that Plaintiff sought to run up the litigation expense in this case in order to bankrupt Defendants' business and squelch competition. In Defendants' view, an appropriate award can be no greater than three times the amount of damages recovered, or $243,205.

For the reasons explained here, the court overrules Defendants' "proportionality" objection. Although Defendants have offered no specifics regarding their claim of excessive billing, the court sustains that objection in part, and orders Plaintiff to reduce its attorneys' fees request to reflect its lack of success on its damages claim.

## **DISCUSSION**

The court begins its analysis of an attorneys' fees petition by making a "lodestar" calculation, multiplying the number of hours reasonably spent on the litigation by the attorneys' reasonable

2

hourly billing rate. *RKI, Inc. v. Grimes*, 233 F. Supp. 2d 1018, 1020 (N.D. Ill. 2002) (awarding fees under the Illinois Trade Secrets Act). The lodestar figure is presumed to be reasonable. *See JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 920 (7th Cir. 2007); *Eddleman v. Switchcraft, Inc.*, 927 F.2d 316, 318 (7th Cir. 1991). Defendants have not challenged the hourly billing rates charged by Plaintiff's counsel, which range from $420.75 to $535.50 for law partners and from $238.00 to $375.00 for associates. Defendants do, however, argue that the number of hours charged to this litigation is excessive. Case authority directs the court to reduce the lodestar figure, where appropriate, in light of the parties' settlement history; the proportionality of the award as compared to the damages sought; and any excessive or unnecessary billing. *See Moriarty v. Svec* ("*Moriarty II*"), 233 F.3d 955, 967 (7th Cir. 2000); *Cole v. Wodziak*, 169 F. 3d 486, 487-89 (7th Cir. 1999). The court addresses those factors below.

**Settlement History**

As explained in *Moriarty II*, the court should consider any "substantial settlement offer" as a factor in a fee award because fees incurred after rejection of such an offer generate little benefit to the prevailing party. 233 F.3d at 967. Defendants assert that they made substantial offers at various points in the litigation ($173,247 in November 2008, $75,000 in January 2010, and $250,000 in September 2010), but Plaintiff rejected those offers and, Defendants assert, declined to make any counterproposals.

Plaintiff objects to any consideration of the parties' settlement exchanges on the ground that Magistrate Judge Denlow, who supervised the settlement efforts, has ordered that the discussions remain confidential. (Reply in Supp. of Fee Pet. (hereinafter "Pl.'s Reply"), at 2-3.) FED. R. CIV. P. 68 explicitly contemplates that a formal offer of judgment can be a bar to recovery of costs, however. Moreover, the case law on attorneys' fees awards explicitly calls for consideration of the parties' settlement history. The court concludes the magistrate judge's standing order does not prohibit consideration of that history in ruling on Plaintiff's fee petition.

3

Assuming that such consideration is appropriate, Plaintiff points out that the materials Defendants themselves have submitted demonstrate that as of November 2008, Plaintiff was willing to negotiate a deal that would have saved both parties litigation expense. Among the materials Defendants have submitted in opposition to the fee petition is the affidavit of Defendant Dale Bjerkness, in which Bjerkness acknowledges that Plaintiff proposed a settlement in the amount of $200,000, plus certain lost profits, in November 2008. (Pl.'s Reply at 1.) As Defendant calculates the lost profits, Plaintiff's total demand, as of November 2008, was for $455,000. (Bjerkness Aff. ¶ 4, Ex. H to Defs.' Objections to Pl.'s Fee Pet. Pursuant to L.R. 54.3 (hereinafter "Defs.' Resp.").)[1] Although that sum substantially exceeds the ultimate damages award, the court has no basis for concluding that the calculations were so inflated as to suggest the demand was made in bad faith. Plaintiff contends that as of November 2008, it had already incurred attorneys fees in excess of its own demand. (Pl. Fee Pet. at 14.) Plaintiff notes, further, that the amount Defendants claim to have offered in November 2008–$173,247–is less than the total of the damages award plus the fees and costs that Defendants have now conceded are properly recoverable. (Pl.'s Reply at 4-5.)

In any event, the court is reluctant to limit the recovery of attorneys fees in this case based on a post-hoc conclusion that Plaintiff should have accepted Defendant's settlement offers. As Plaintiff points out, the genuine likelihood that the court would award attorneys fees justified Plaintiff's refusal to accept an offer that wholly discounted such an award. *Id.* at 6, citing *United Auto. Workers Local 259 Social Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 291 (3d Cir. 2007); *Needham v. Innerpac, Inc.*, No. 1:040 CV 393, 2008 WL 5411638, at *5 (N.D. Ind. Dec. 24, 2008). Moreover, at least one of the settlement proposals Defendants cite preceded the court's preliminary injunction ruling in which it granted substantial non-monetary relief: the court directed Defendants

---

[1] In light of Bjerkness's affidavit, Defendants' assertion, in its objections to the fee petition, that Plaintiff made no response to Defendants' various settlement offers (Defs.' Resp. at 5) is mystifying.

"immediately to destroy any and all proprietary information brought with them from SKF" and to submit to an inspection of their computers. (April 24, 2009 Order [98].) And Plaintiff was entitled to discovery of the use that Defendants had made of the stolen computer files before reaching a settlement of its claim for lost profits.

**Proportionality of Fees to Damages**

The more troublesome concern in this case is the issue of proportionality. The *Moriarty I* court cautioned that a district court should engage in "increased reflection before awarding attorney's fees that are large multiples of the damages recovered or multiples of the damages claimed." 233 F.3d at 968. If the fees requested do not exceed the damages "claimed" in this case (Plaintiff argued in closing that it had suffered more than $6 million in lost profits), they certainly do exceed the damages ultimately recovered by many multiples.

Increased reflection is appropriate before awarding the amount Plaintiff has requested here because a "comparatively large fee request raises a red flag." *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 546 (7th Cir. 2009). Some Seventh Circuit authority suggests "that a litigant who wins less than 10% of his initial demand either is not a prevailing party for purposes of fee-shifting statutes or should be treated *as if* he had not prevailed." *Perlman v. Zell*, 185 F.3d 850, 859 (7th Cir. 1999) (citing *Cole v. Wodziak*, 169 F.3d 486 (7th Cir.1999); *Fletcher v. Ft. Wayne*, 162 F.3d 975 (7th Cir.1998); *Simpson v. Sheahan*, 104 F.3d 998 (7th Cir.1997)). The focus is on what the prevailing party had reasonably expected to recover in the litigation. Thus, if the prevailing party "had incurred attorney's fees that were disproportionate to a reasonable estimate of the value of its claim, it could not recover all those fees, but only the reasonable proportion, which is to say the amount that would have been reasonable to incur had the value of the claim been estimated reasonably rather than extravagantly." *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir. 2000). Still, the Seventh Circuit has refused to adopt "any mechanical rules requiring that a reasonable attorney's fee be no greater than some

5

multiple of the damages claimed or recovered." *Moriarty II*, 233 F.3d at 968. Instead, as the Court of Appeals explained in *Anderson*, "[p]roportionality can refer to multiple concepts. " 578 F.3d at 544-45. Reversing a decision by the district court to slash the plaintiffs' fee request as excessive, the Seventh Circuit acknowledged that the fees requested in that case were seven times the amount of the damages, but noted that the amount sought was not at all disproportionate to the effort necessary to win the judgment. *Id.* at 546.

In the case before this court, Defendants' central objection appears to be that the very small amount Plaintiff recovered is not "worth" the costly effort. But *Anderson* makes clear that this issue is not one for the court's consideration:

> Reasonableness has nothing to do with whether the district court thinks a small claim was "worth" pursuing at great cost. Fee-shifting statutes remove this normative decision from the court. If a party prevails, and the damages are not nominal, then Congress has already determined that the claim was worth bringing. The court must then assume the absolute necessity of achieving that particular result and limit itself to determining whether the hours spent were a reasonable means to that necessary end.

*Anderson*, 538 F.3d at 546. The Court of Appeals went on to explain that it is "absolutely permissible to spend $100,000 litigating what is known to be a $10,000 claim if that is a reasonable method for achieving that result." Id.; *see also Kitchen v. TTX Co.*, 284 F.3d 688, 691-92 (7th Cir. 2002) (awarding lodestar amount over $1 million where plaintiffs' settlements exceeded nuisance value); *Garcia v. R.J.B. Properties, Inc.*, No. 06 C 4994, 2010 WL 2836749, at *4 (N.D. Ill. July 19, 2010) (awarding fees nearly ten times greater than the damage award); *Catalan v. RBC Mortg. Co.*, No. 05 CV 6920, 2009 WL 2986122 at *11-12 (N.D. Ill. Sept. 16, 2009) (awarding fees nearly 15 times greater than the damage award); *Bennett v. Slowiak*, No. 88 C 2018, 1994 WL 698488, at *2-5 (N.D. Ill. Dec. 12, 1994) (awarding fees near the lodestar despite the fact that plaintiff had sought $700,000 but recovered only $10,000); *Altergott v. Modern Collection Techniques, Inc.*, 864 F. Supp. 778 (N.D. Ill. 1994) (awarding fees eight times greater than the damage award).

The Illinois Trade Secrets Act authorizes the recovery of attorneys fees to prevailing parties.

Plaintiff SKF prevailed here, proving a violation of the Act, and was awarded an injunction as well as compensatory and exemplary damages. Indeed, as SKF observes in its reply memorandum, recovering damages was not the "initial primary goal" of this litigation. (Pl.'s Reply at 10.) SKF is entitled to the fees reasonably expended to achieve that result, even if those fees greatly exceed the damages award.

**Excessive or Unnecessary Billing**

The court turns, finally, to the question of whether the fees SKF incurred were indeed reasonably expended. In some respects this inquiry is related to the proportionality analysis; it is not reasonable for a plaintiff to devote enormous costly effort to litigation where the plaintiff itself understands a successful outcome would generate an amount far less than the cost. In *Cole v. Wodziak*, for example, the district judge properly reduced a request for fees that exceeded the amount plaintiffs themselves believed they should recover. 169 F.3d at 488. The court will not award attorneys fees for time spent on matters unrelated to the claims on which the plaintiff has prevailed, and where a plaintiff has achieved "only partial or limited success," an award for all hours devoted to the litigation may be excessive. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Gautreaux v. Chicago Housing Auth.*, 491 F.3d 649, 661 (7th Cir. 2007). The court is expected to exclude hours that are "'excessive, redundant, or otherwise unnecessary.'" *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 552 (7th Cir. 1999) (quoting *Hensley*, 461 U.S. at 434). To do so, the court is often required to consider objections to specific billing entries and assess whether the time devoted to various tasks was expended on matters on which the plaintiff did not prevail, or did not fully prevail. *See, e.g., Davis v. Budz*, No. 99 C 3009, 2011 WL 1303477, at *4-6 (N.D. Ill. Mar. 31, 2011); *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1019-26 (N.D. Ill. 2009).

Plaintiff's counsel billed more than 2700 hours to this litigation, a number Defendants characterize as "outrageous." (Defs.' Resp. at 11-12.) Disappointingly, however, Defendants have devoted only two pages of their response memorandum to this issue, and offer only somewhat

7

general observations about the purported excessiveness of Plaintiff's fees: that Plaintiff did not prevail on all of its claims; that Plaintiff's evidence on the trade secret claim, in the court's own words, "was not a model of clarity", citing *SKF II*, 2010 WL 3155981, at *6; and that Plaintiff over-staffed the case by using two partners, two associates, and numerous support staff. (Defs.' Resp. at 13.)

Line-by-line review of counsel's billing records is, of course, a tedious process. Still, the court would expect counsel who challenge an opponent's billing as excessive to engage in that process rather than expecting the court to do so without guidance. The general objections Defendants have raised are not particularly compelling. Defendants are correct that Plaintiff did not prevail on all of its claims, but in the court's understanding, the same factual material was offered in support of all of those claims. To the extent that Plaintiff did not prevail, the unsuccessful claims failed as a matter of law, and any time devoted to unsuccessful claims would have been expended in briefs, not in discovery or evidentiary hearings. The court's observation that evidence related to the trade secrets claim was "not a model of clarity" was directed at least as much to Defendants' evidence and arguments as it was to Plaintiff's. With respect to the concern regarding overstaffing, Plaintiff notes that just four attorneys accounted for 94% of the time billed to this litigation, and that Defendants utilized as many lawyers as did Plaintiff. (Pl.'s Reply at 11.)

This litigation was hard-fought and extraordinarily contentious. Counsel, who should bring reason and dispassion to the resolution of their clients' dispute, instead appeared to fan the flames. The court has no admiration for the hostile practice on display in this case; but the court is unable to conclude that Plaintiff's litigation strategy was alone responsible for excessive billing. Defendants put Plaintiff to the burden of proving facts that Defendants knew or should have known to be true: that they accessed Plaintiff's computers repeatedly and took substantial amounts of data. To argue that the data was not properly protected or had little value was fair game; to suggest that Defendants did not have the material at all needlessly protracted the litigation. Plaintiff

notes, too, that Defendants refused requests to streamline the litigation by trying the injunction issues together with damages issues. The court concludes that Defendants are to some degree responsible for the substantial bills Plaintiff now seeks to shift to them. *See City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11 (1986) ("[Defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (quotation omitted)); *Catalan*, 2009 WL 2986122, at *5 ("When parties that do not bear the burden of proof at trial mount a spirited defense of the case, they can hardly complain when their adversaries spend at least as much time and effort to surmount the defense, nor can they validly object to paying the adversaries' reasonable fees when the defense fails."); *Krumwiede v. Brighton Assocs., L.L.C.*, No. 05 C 3003, 2006 WL 2349985, at *1 (N.D. Ill. Aug. 9, 2006) ("The reasonableness of the requested hours and fees varies in every case, often in direct proportion to the ferocity of an adversaries' handling of the case.")

As Plaintiff notes, the most straightforward evidence that counsel's fees are reasonable is the fact that the client paid them. So said the Seventh Circuit in *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir 2008). *See also Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996) ("[T]he best guarantee of reasonableness is willingness to pay."). When SKF's owners purchased the business in 2007, they paid $22 million, a price that assigned great value to the trade secrets used in the business, *SKF II,* 2010 WL 3155981, *1; the court is not prepared to question their decision to spend more than $1 million in litigation to protect those trade secrets.

The court concludes that SKF is entitled to recover the fees requested, with one significant exception: the time and expense devoted to its damages expert, Patricia Domzalski. As explained in the court's decision awarding modest damages, SKF's expert's calculations were unsupported because SKF did not prove a direct causal link between Defendants' misappropriation of SKF's trade secrets and SKF's own purported loss of business. *SKF II*, 2010 WL 3155981, *8.

Accordingly, the court disregarded Domzalski's testimony, which was based on the witness's assumption that Defendants' use of the computer files they took from Plaintiff caused SKF to lose profit. (Trial Tr., at 322.) The only portion of Domzalski's testimony that was useful to the court was Domzalski's estimate that Defendants' new business enjoyed a 65% profit margin, a figure the court used in calculating damages under an "unjust enrichment" theory. *SKF II*, 2010 WL 3155981, at *9. That 65% figure certainly could have been provided without the need for a damages expert, however, and the court relied on other evidence for the revenue figures used in those calculations. Plaintiff is not entitled to recover fees or expenses for Ms. Domzalski's testimony.

That testimony consumed 90 pages (approximately 15%) of the 597-page trial transcript. Apart from that information, however, the court is unable from the existing fee petition to determine the appropriate reductions, and, as noted, Defendants have declined to engage in the specific review that would be useful to the court. The court will, therefore, direct Plaintiff to subtract from its request for fees the amounts related to Ms. Domzalski's testimony, including the fees paid for that testimony; attorney time devoted to discovery, preparation, and presentation of that testimony; and time devoted to briefing and argument relying on that testimony.

This ruling effectively sustains Defendants' objection to Plaintiff's request for reimbursement of expert witness expense in the amount of $107,991.00. The court agrees with Plaintiff that Defendants' remaining objections to those expenses are waived by their failure to assert them in the Local Rule 54.3 process.

## **CONCLUSION**

Plaintiff's motion for an award of attorneys fees and expenses [170] is granted in part and denied in part. Plaintiff is directed to submit its amended fee petition within 21 days.

ENTER:

*[signature: Rebecca R. Pallmeyer]*

Dated: September 27, 2011

_____
REBECCA R. PALLMEYER
United States District Judge